IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FLEXWORK SPORTS MANAGEMENT LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>DIONTAE JOHNSON,<br><br>*Defendant*. | Civil Action No.: 2:22-cv-1128<br><br>**COMPLAINT** |

Plaintiff FlexWork Sports Management LLC ("FlexWork"), by and through its undersigned counsel, hereby brings this Complaint against defendant Diontae Johnson ("Johnson"), and in support thereof avers as follows:

**PRELIMINARY STATEMENT**

1. This action stems from Johnson's inexcusable, deliberate, and callous decision to breach his contract with FlexWork and be a no-show at a youth football camp held in his name in the city of his home team, Pittsburgh.

2. Despite the fact that hundreds of families had each paid hundreds of dollars to see their child play football and learn valuable skills and lesson from Johnson, and despite the fact that these children showed up expecting a "meet and greet" with a local sports figure, and despite the fact that FlexWork had incurred tens of thousands of dollars in costs and expenses in anticipation of Johnson's arrival, Johnson simply chose not to show up.

3. In fact, as admitted by Johnson's marketing manager and agent, Maxx Lepselter ("Lepselter"), Johnson's no-show was inexcusable – and avoidable: he simply did not want to wait at the airport for his rescheduled flight.

4. In making the cold-hearted decision not to show up for the event, Johnson not only breached his contract with FlexWork, but he also subjected FlexWork to significant damages, in the form of refunds, credits, and reputational damage.

## PARTIES

5. FlexWork is a Connecticut limited liability company.

6. Upon information and belief, Johnson is an individual residing in Pennsylvania.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the amount in controversy exceeds the jurisdictional threshold, exclusive of interest and costs, and is between citizens of different states.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Johnson resides in this District, and this is the district in which a substantial part of the events or omissions giving rise to the claims asserted herein occurred.

## FACTUAL ALLEGATIONS

**Johnson's Personal Appearance Agreement**

9. Johnson currently plays in the National Football League for the Pittsburgh Steelers.

10. FlexWork's main business is running youth football camps throughout the country, which are sponsored and "hosted" by selected professional athletes.

11. As part of these camps, both FlexWork and the athlete promote and advertise the upcoming camp for the purposes of encouraging enrollment and generating media attention.

12. As opposed to other youth sports camps, the main attraction and value of FlexWork camps is the appearance and participation by a local professional athlete.

13. Specifically, in addition to meeting a local professional athlete, FlexWork campers get both group and one-on-one instruction and play with the athlete, signed memorabilia, leadership training, and mentoring.

14. On or about November 2, 2021, FlexWork and Johnson entered into a Personal Appearance Agreement (the "Agreement"), pursuant to which Johnson agreed to host a FlexWork youth football camp on May 22, 2022 in Pittsburgh, Pennsylvania (the "Camp"), billed as "FlexWork Sports Youth Camp presented by Diontae Johnson".

15. The Agreement required, *inter alia*, for Johnson to "interact with campers" during the Camp, hold "one on one drill[s]" with the campers, provide signed photographs for "each camp attendee", and "take photos with campers".

16. The Agreement also required that, if Johnson cancelled his appearance after April 5, 2022, Johnson was required to pay FlexWork for all expenses incurred to date plus a cancellation fee in the amount of $2,250.00.

17. The Agreement further provided for payment of attorneys' fees to the prevailing party in the event any action is brought to enforce or interpret the terms of the Agreement.

**FlexWork Prepares for the Camp and the Parties Finalize Johnson's Agenda**

18. Once the Agreement was signed, FlexWork went to work on the planning and preparation of the Camp, which was later set for Cupples Stadium in Pittsburgh.

19. For example, with a date for the Camp locked in, FlexWork began calling venues and facilities in the area to negotiate prices for the Camp.

20. FlexWork also spent significant time and resources to contact local news stations to both tout the event on their network and to get media coverage of the Camp.

21. FlexWork also reached out to various sponsors to coordinate corporate sponsorship opportunities for the Camp which is in large part valued based on the fact that Johnson would be at the Camp.

22. FlexWork incurred various costs and expenses to prepare for the Camp and Johnson's arrival.

23. For example, FlexWork prepared marketing campaigns to advertise the Camp and Johnson's appearance at the Camp. In addition, FlexWork prepared and rented the facilities used for the Camp; hired a graphic designer to make a Camp flyer and t-shirts; designed and ordered t-shirts with Johnson's name on them; hired photographers, videographers, and a DJ; secured and paid for staff at the Camp; and arranged for other related travel expenses for staff (including airfare, hotels, and ground transportation).

24. In anticipation of the Camp, FlexWork purchased football equipment, food and drink, water coolers and bottles, and numerous other items needed to host the Camp.

25. As of the day of the Camp, 230 campers between the ages of 6 and 16 had enrolled in the Camp and approximately 11 paid staff members were on site.

26. Tickets for the camp started at $125.00 each, although parents could (and some did) pay extra for additional benefits and perks.

27. As the press later noted, many parents had purchased their child's ticket as a holiday gift.

28. In the weeks before the Camp, representatives for both FlexWork and Johnson continued discussing details of the Camp, orchestrating arrangements, and finalizing pre-Camp plans.

29. For example, there were several phone calls to discuss and confirm Johnson's travel plans and itinerary, including flights, hotel, and ground transportation.

30. Between May 2 and May 6, 2022, FlexWork's Chief Executive Officer J. Forrest West ("West") and one of Johnson's agents, Lepselter, of Maxx MGMT, exchanged text messages discussing the images Johnson would post on his social media accounts to promote the Camp.

31. On May 17, 2022, on a group text message chain, West, K'Hadree Hooker ("Hooker"), President of FlexWork's Youth Football Division, Lepselter, Sean Salci ("Salci") of Maxx MGMT, and Alec Scazafave ("Scazafave"), also of Maxx MGMT, all discussed further details of Johnson's arrival the morning of the Camp.

32. In these text messages, the parties discussed the "details needed for camp location/time/etc. and any other details needed."

33. That same day, Scazafave and Hooker spoke on the phone to coordinate details for Johnson's arrival.

34. On May 20, 2022, the parties continued discussing details of the Camp, including Johnson's day-of agenda.

35. That day, the parties exchanged text messages and phone calls about the "run down of the day of operations" for Johnson.

36. Later that day, Hooker provided the Camp's day-of agenda to the group.

37. The agenda provided for Johnson's arrival by 9:30 am, after which he would autograph 110 FlexWork photos.

38. According to the agenda, after signatures, Johnson would be available to speak with the local media at the Camp about the upcoming season, after which he would "welcome kids and families to the camp," play football with the campers, and take group photos.

39. Shortly thereafter, Hooker and Scazafave discussed the agenda on the phone and confirmed the details of Johnson's day at the Camp.

40. On May 21, 2022, the day before the Camp, Salci and Hooker exchanged text messages on the group text confirming the "exact address for the car service" to drop Johnson off at the Camp.

41. On the morning of May 22, 2022, the day of the Camp, Hooker sent a text message to the group with "the exact pin location where [Johnson] can come to upon arrival", noting that "his car service driver can par[k] here as well." Hooker also added FlexWork's Cameron Kawa to the group text message, noting that "he will be with [Johnson] every step of the way."

**Johnson is a No-Show at the Camp**

42. At no point prior to May 22, 2022, the day of the Camp, did FlexWork have any indication or reason to believe that Johnson would not show up at the Camp.

43. Then, at 9:47 a.m. on May 22, 2022, just 13 minutes before the Camp was scheduled to start, and 17 minutes after Johnson's expected arrival, Lepselter texted the group stating: "Guys sit tight we have an issue. [Johnson's] flight was canceled from Sarasota last night he's [going to] be in later today."

44. Given Johnson's expected arrival at 9:30 a.m., and the fact that FlexWork was learning of this purported cancelation almost half-a-day after it allegedly occurred, Hooker immediately responded asking for a call and "briefing", noting that the campers' "parents are going to want an explanation."

45. When no one responded to anyone at FlexWork, West sent a text message directly to Lepselter asking for a call "asap", stating "all the campers are there, we don't know how to move forward, as this has never happened."

46. That day, West and Lepselter spoke on the phone during which time Lepselter admitted that Johnson's original flight was canceled, that Johnson was rebooked on another flight shortly thereafter, but that Johnson did not want to wait for his new flight time so he left the airport.

47. On that call, Lepselter said to West: "How do you want to handle this? Do you want to try to talk to [Johnson] or go straight to legal?"

48. The next day, Lepselter texted West stating that Johnson "obviously already agreed to do a free make up camp and give every camper a pair of signed Nike gloves that he try's [sic] on."

49. Johnson breached the Agreement by failing to appear at the Camp.

50. As a result of that breach, FlexWork incurred significant costs and expenses to which it is entitled to recover from Johnson.

51. Specifically, FlexWork refunded a total of $36,099.33 in registration fees back to the campers.

52. FlexWork also provided credits in the same amount ($36,099.33) so that each camper would be able to attend a free FlexWork camp in the future, a move that FlexWork deemed necessary given the reputational damage caused by Johnson's breach.

53. To date, numerous campers have used those credits to register for other FlexWork camps free of charge.

54. FlexWork also spent over $3,000.00 on t-shirts with Johnson's name on them, which were to be handed out to all campers and signed by Johnson.

55. FlexWork incurred other operational expenses, including facility fees, photographer and videographer fees, rental cars, airline flights, hotels, food and beverage, and staff payroll, in an amount no less than $10,400.00.

56. FlexWork also spent $1,307.37 on Facebook advertisements to promote the Camp.

57. FlexWork also suffered damages in an amount which cannot easily be ascertained at this time as a result of the reputational harm to the company's brand and name.

58. Unsurprisingly, given the media presence anticipating Johnson's arrival at the Camp, various local media sources picked up Johnson's no-show and the local community's reaction.

59. Several local newspapers published articles naming FlexWork and the Camp, describing Johnson's no-show, and stating how "devastated" campers were.

60. For example, one article called out that Johnson "was a no-show to his youth football camp" and that FlexWork's staff "were just as disgusted as the parents, if not more."

61. Another article in the Pittsburgh Post-Gazette noted that Johnson's no-show left "many kids and their parents disappointed" and other kids "were devastated", highlighting that "the draw for most, if not all, campers was the name on the marquee."

62. As a result of Johnson's no-show, and as reflected in the news articles covering the Camp, some parents blamed FlexWork and labeled the Camp a "ponzi scheme."

63. Given that this was the first camp FlexWork was hosting in the Pittsburgh area, FlexWork was required to control the damage caused by Johnson's no-show.

64. Johnson's breach therefore not only resulted in FlexWork incurring significant costs, but created a public relations nightmare that required FlexWork to take additional steps to ensure that campers in the area return to future camps, and that FlexWork's reputation in the community was not affected.

## COUNT I:
## BREACH OF CONTRACT

65. FlexWork repeats and realleges the allegations in paragraphs 1-64 as if fully set forth herein.

66. At all relevant times, the Agreement constituted a valid and enforceable contract between FlexWork and Johnson.

67. FlexWork has fulfilled each and every obligation under the Agreement.

68. Johnson breached the Agreement by failing to show up at the Camp without any valid basis or justification.

69. Johnson further breached the Agreement by failing to pay FlexWork for the expenses incurred by FlexWork, plus the cancellation fee of $2,250.00, resulting from Johnson's eleventh-hour cancellation of his appearance as expressly required by the Agreement.

70. Johnson is further obligated to pay FlexWork's attorneys' fees incurred in bringing this action pursuant to the "Attorneys' Fees" Section on Page 5 of the Agreement.

71. As a result of Johnson's breach, FlexWork has suffered and continues to suffer damages in an amount to be determined at trial, plus interest, costs, disbursements, and attorneys' fees.

## COUNT II:
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

72. FlexWork repeats and realleges the allegations in paragraphs 1-71 as if fully set forth herein.

73. At all relevant times, the Agreement constituted a valid and enforceable contract between FlexWork and Johnson.

74. As with any contract, Johnson owed a duty of good faith and fair dealing to FlexWork.

75. Johnson acted in bad faith by failing to appear at the Camp, despite having full knowledge of all of the planning and expenses incurred by FlexWork in putting on the Camp every step of the way.

76. Specifically, as admitted by Lepselter, Johnson could have taken another flight that would have gotten him to the Camp in time, but he chose not to.

77. As a direct result of Johnson's breaches of the implied covenant of good faith and fair dealing, FlexWork has been injured and deprived of, *inter alia*, profits and client goodwill, including, but not limited to, the Camp fees FlexWork would have recovered if Johnson acted in good faith and attended the Camp as agreed by Johnson and FlexWork.

78. FlexWork has been damaged in an amount to be determined at trial, plus interest, costs, disbursements, and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff FlexWork Sports Management LLC respectfully demands that a judgment be entered against Defendant Diontae Johnson as follows:

a. Directing that Johnson pay actual damages to FlexWork in an amount to be determined, including but not limited to, direct and consequential damages, attorneys' fees, and any and all profits lost by FlexWork as a result of Johnson's wrongful conduct;

b. Directing that Johnson pay compensatory and punitive damages, costs, and all other expenses incurred in prosecuting this action to FlexWork in an amount to be determined;

c. Directing that Johnson pay the pre- and post-judgment interest at the rate allowed by law; and,

      d.      Granting FlexWork such other and further relief as this Court deems just and proper.

                                  Respectfully submitted,

                                  /s/ *Damien H. Weinstein*
Damien H. Weinstein* (PA 323899)
WEINSTEIN & KLEIN P.C.
1 High Street Court, Suite 5
Morristown, New Jersey 07960
Telephone: (347) 502-6464
Facsimile: (347) 704-0910
dweinstein@weinsteinklein.com
*Attorneys for Plaintiff*
*FlexWork Sports Management LLC*

*\*federal admission pending*

Dated: Morristown, New Jersey
August 2, 2022